UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY EARL PRICE,

    Petitioner,

v.                                        Case No. 2:08-cv-221
                                        HON. ROBERT HOLMES BELL

JEFF WOODS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Anthony Earl Price filed this petition for writ of habeas corpus challenging his conviction for second degree murder. Petitioner was sentenced to a prison term of 20 years to 75 years imprisonment. Petitioner was charged with murder and was convicted by a jury along with his co-defendant. Petitioner and his co-defendant murdered the victim during a drug transaction, disposed of the body, and drove the victim's vehicle to Alabama. Petitioner and his co-defendant made statements to their friends and admitted to police that they had strangled the victim. At trial, petitioner and his co-defendant claimed that they acted in self-defense after being threatened by the decedent with a gun. Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

Petitioner raises the following claims:

I. The trial court gave a legally incorrect manslaughter instruction depriving petitioner of his right to have a lessor included offense instructed to the jury.

II. Petitioner and his co-defendant's statements were admitted at trial although they were obtained in violation of the Constitution.

III. African Americans were systematically excluded from the jury pools and petitioner did not receive a fair representative jury.

IV. Petitioner's sentence was based upon matters not submitted to the jury.

V. Trial counsel was ineffective.

V. Appellate counsel was ineffective.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that the trial court improperly instructed the jury on the lessor included offense of manslaughter. The Michigan Court of Appeals concluded that no reversible error occurred from the manslaughter instruction or the failure to provide a voluntary manslaughter instruction:

> Here, the trial court's manslaughter instruction did not conform to a cognizable form of imperfect self-defense as recognized in Michigan; consequently, the erroneous instruction is properly classified as a preserved, nonconstitutional error. *People v Cornell*, 466 Mich 335, 363; 646 NW2d 127 (2002). Based on our examination of the entire cause, however, we are not persuaded that the trial court's error requires reversal because it did not undermine the reliability of the jury's verdict of second-degree murder. The court's instructions made it clear that lawful self-defense was a complete defense to murder, so the manslaughter instructions were relevant only if the jury found a realistic possibility of lawful self-defense. Defendant Price has not shown that it is more probable than not that he would have been acquitted of second-degree murder if the trial court had not given the erroneous manslaughter instruction. Hence, reversal is not required. *Id*. at 364; see also *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).
>
> We have also considered defendants' positions that the trial court erred by failing to instruct the jury on voluntary manslaughter based on provocation under traditional common-law principles. We note the provocation is not an actual element of voluntary manslaughter, but constitutes a circumstance that negates the presence of malice. *People v Mendoza*, 468 Mich 527, 536; 664 NW2d 685 (2003); *People v Darden*, 230 Mich App 597, 602-603; 585 NW2d 27 91998). The provocation must cause a defendant to act out of passion, rather than reason. *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991). It must be such that it would cause a reasonable person to lose control. *Id*. at 389; *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998), aff'd 461 Mich 992 (2000).
>
> Regardless of whether we examine the evidence in this case under the pre-*Cornell* standard applicable to cognate lesser offenses or by viewing voluntary manslaughter as a necessarily included lesser offense of murder and employing the rational view of the evidence standard set forth in *Cornell* and *Mendoza, supra*, we conclude that the trial court properly declined to instruct on voluntary manslaughter

based on provocation. The alleged provocation in this case was that the victim was reaching for a gun. If believed, however, this evidence did not suggest that defendants were acting out of a loss of control, but rather that they lunged and grabbed the victim in self-defense. Because the evidence would not have supported a conviction for voluntary manslaughter based on provocation, the trial court properly refused to instruct on that offense.

In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court held that a death sentence was unconstitutional where the jury was never instructed on a lesser included offense noncapital offense where the evidence supported such a verdict. The Court concluded:

> While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this. For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense - - but leaves some doubt with respect to an element that would justify conviction of a capital offense -- the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.
>
> Such a risk cannot be tolerated in a case in which the defendant's life is at stake. As we have often stated there is a significant constitutional difference between the death penalty and lesser punishments.

*Id.* at 637. The Supreme Court left open the question whether the Due Process Clause is violated when a lesser included offense is omitted from jury consideration in a noncapital case. *Id.* at 638 n. 14. Accordingly, in the opinion of the undersigned, petitioner cannot show that the Michigan Court of Appeals' decision was an unreasonable interpretation of the law as established by the Supreme Court.

Respondent argues that petitioner procedurally defaulted his claims that statements were improperly obtained by police and admitted into evidence at trial, that the jury did not represent

a fair cross section and systematically excluded African Americans, that his sentence was increased when the court relied on matters not submitted to the jury, and that he received ineffective assistance of counsel when counsel failed to move to suppress petitioner's statement and failed to object to testimony provided by detectives Lopez and Thompson. These issues were first presented by petitioner in his motion for relief from judgment. The Michigan appellate courts denied petitioner's motion in form orders under "MCR 6.508(D)". Because these form orders are ambiguous as to whether they refer to procedural default or denial of relief on the merits, they are unexplained; therefore, we must look to the last reasoned state court opinion to determine the basis for the state court's rejection of petitioner's claim. *Guilmette v. Howes,* 624 F.3d 286 (6th Cir. 2010). In this case, the last reasoned opinion came from the trial court in the denial of petitioner's motion for relief from judgment.

The trial court explained that there existed valid strategic reasons for counsel to allow petitioner's statements to enter into evidence. The court stated:

> Defendant's trial counsel had a sound strategic reason for not attempting to suppress defendant's statement to the police and for not objecting to the jury hearing the co-defendant's statement. Therefore, defendant forfeited any entitlement to claim error in those statements' presentation at his trial, and he cannot sidestep that forfeiture by claiming that counsel's silence was an instance of ineffective representation. Sometimes, but not often, the lack of a contemporaneous objection does not preclude a later complaint, MRE 103(a)(1) and (d), but not when that silence was a matter of design for strategic purposes. Then, the evidentiary issue is forever lost as a potential claim-of-error. *People v Riley*, 465 Mich 442, 448-450 (2001). And, when sound, a strategy of withholding an objection is not ineffective representation, *People v Pickens*, 446 Mich 298, 325 (1994), even when that strategy fails. *Id.*, at 330.
>
> Defendant's counsel used his client's "confession" to put before the jury a factual basis for the defense, and he used the co-defendant's "overlapping" statement to corroborate the defendant's statement. That was a sound strategy because, while they admitted involvement

> in the killing of Mr. Montalvo, both defendants' statements also laid out the specifics of a facially credible claim of self-defense, which counsel was able to present to the jury without subjecting either defendant to the rigors and risks of cross-examination. In this Court's career (for 16 years) as a criminal defense attorney and its tenure (another 16 years) on the bench, it has come to appreciate the accuracy of the observation made to it by the judge of the Michigan Court of Appeals for whom it clerked: Far more defendants have been convicted because they testified than because they didn't. It can be deficient lawyering to put a defendant on the witness stand when that is not absolutely necessary.
>
> Defendant's claims of self-defense were ultimately undermined by other evidence in the case, but his counsel could have done nothing to dilute that other evidence. It was admissible and was going to be the subject of testimony by prosecution witnesses. The best that could be done for defendant was to present, without any risk of dilution by cross-examination, his version of events, which included a reason to believe that he had acted in self-defense, and, then, to argue about it in a way which hopefully would avoid or overcome the other evidence. In sum, trial counsel carefully determined the best defense which was available and the best way to present that defense. By definition, therefore, his performance "was [not] 'outside the wide range of professionally competent assistance.'" *Id*. As a result, defendant cannot now complain in any way about the strategy which was the bulwark of his defense.

Accordingly, petitioners' claims regarding the improper admission of his statements during trial and his counsel's failure to move to suppress those statements fail to support his claim that his constitutional rights were violated.

Further, the trial court explained that petitioner's failure to preserve the issue of lack of African American jurors in his jury pool defeats his argument that he received an unfair jury. The court explained:

> After defendant's trial, this Court learned that, for a 16-month period which ended soon after trial in this case, a computer programing error by this County's Information Technology Department likely resulted in fewer than a truly proportional number of African-Americans being sent summonses for jury duty. Defendant, who is African-American, now relies on that error to seek another trial. Unfortunately, no

objection was lodged at his trial by either his counsel or his co-defendant's counsel, nor was the issue raised on appeal. While, of course, not a matter of strategy, the issue not then being known, those failures still preclude any relief now; specifically, they preclude establishing any substantive prejudice. See, e.g., *People v McKinney*, 258 Mich App 157, 161-162 (2003), *lv den* 469 Mich 987 (2003).

For want of a contemporaneous objection, it is now impossible to know the racial composition of the particular pool of jurors from which defendant's jury was selected, and without that knowledge defendant cannot establish his entitlement to any relief. At the pertinent time, African-Americans were being summoned as jurors. Enough were summoned, although, perhaps, not in actual proportion to their numbers in the County, that many panels of prospective jurors were appropriately diverse. The judges of this Court were unaware of the overall problem because we were regularly seeing panels of prospective jurors with proportionate representation. Concerned for adequate diversity, we were watching. Sometime earlier, this circuit had made a concerted effort to encourage minority responses to jury summonses. It appeared that we had succeeded. While we were seeing a surprising number of jurors from one particular suburb (Rockford), significant numbers of African-Americans were in many jury pools.

Once a year, several thousand prospective jurors were mailed summonses. The programming error affected only that mailing. Then, each week throughout the year, pools of a few hundred were summoned from among those who had responded to their summonses, and panels of 40-50 individuals were then selected at random for individual trials. Enough minorities were summoned that, often, proportional numbers ended up on the smaller panels selected for individual cases. Random selection does not mean that every smaller pool reflected the entire year's summoned pool. Some smaller pool would be so representative, but some would have more African-Americans, and some would have fewer. It is because many juries were not flawed that the lack of an objection becomes dispositive.

Had the effect of the programming error been so pervasive that virtually all jury panels were significantly skewed, the lack of a contemporaneous objection would likely be of no moment. Then, prejudice could be realistically presumed. However, because many panels were not affected, defendant can be entitled to relief only if his jury was not one of the several unaffected ones. Because records were not kept of the race of individual jurors, it is impossible to now

> reconstruct the racial make-up of the panel from which defendant's jury was selected. A contemporaneous objection would have recorded appropriate information. Therefore, it cannot be determined whether defendant was prejudiced by the earlier irregularity in summoning jurors. Not only is such a showing required for relief, the burden is on defendant to make that showing. MCR 6.508(D)(3)(b)(I) and (iii). Hence, the impact of the inability to falls on defendant. *McKinney, supra*.

Petitioner has made no effort to establish that his jury pool lacked an appropriate representative number of African Americans. Ultimately, it is petitioner's obligation to show that he did not have a fair and impartial jury drawn from a fair cross section of the community. *Berghuis v. Smith*, 130 S.Ct. 1382 (2010). Petitioner has not shown that the trial court's findings were unreasonable.

Petitioner alleges that his sentence was enhanced with facts that were not presented to the jury. Petitioner relies on *Blakely v. Washington*, 542 U.S. 296 (2004), arguing that any increase in a sentence imposed based on facts not submitted to a jury is unconstitutional. However, the issue presented in *Blakely* was the constitutionality of a statute which set out a guideline range of sentences, but permitted a court to impose a sentence in excess of those guidelines based on facts not submitted to a jury. In Michigan, a court does not have the authority to exceed the statutorily authorized sentence, and the sentences imposed here by the trial court do not exceed the statutorily authorized ranges. Therefore, *Blakely* is not applicable.

Petitioner raises claims of ineffective assistance of trial and appellate counsel. In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989)

(citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). In the opinion of the undersigned, petitioner's ineffective assistance of counsel claims lack merit. The decisions of the Michigan courts did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in decisions that were based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   May 20, 2011